## In re CUMMINGS.

(District Court, E. D. Pennsylvania. May 5, 1911.)

No. 1,938.

BANKRUPTCY (§ 136*)—WITHHELD ASSETS—CONTEMPT—DEFENSES.

A bankrupt having been ordered on November 18, 1909, to pay to his trustee $69,317.14, such order was affirmed by the District Court on February 21, 1910; the order fixing March 21st as the time of payment. This order was again affirmed by the Circuit Court of Appeals, mandate being filed on March 10, 1911, and on trustee's petition the time of payment was extended to April 26th, and, the bankrupt not having complied, a rule was granted against him for contempt. *Held* that, while the bankrupt's plea of physical inability to comply constituted a defense to the rule, his bare denial of ability was insufficient to establish the fact.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In the matter of the bankruptcy proceedings of John E. Cummings. On rule to attach the bankrupt for contempt. Allowed.

M. Hampton Todd, for trustee.
John E. Cummings, in pro. per.

J. B. McPHERSON, District Judge. On November 18, 1909, the referee ordered the bankrupt to pay $69,317.14 to his trustee. The District Court affirmed the order on February 21, 1910, afterwards fixing March 21st as the time of payment. On appeal the decree of the District Court was affirmed (184 Fed. 718), and the mandate was filed below on March 10, 1911. On April 12th, upon the trustee's petition, the District Court ordered payment on or before April 22d. The bankrupt answered, asserting his inability to pay, whereupon the trustee asked for an attachment. On April 26th the pending rule was granted returnable May 3d, and on May 1st the bankrupt filed an answer, again asserting that he could not possibly comply. On May 3d a hearing was had before the court, at which the statements of witnesses were heard in the bankrupt's behalf, and he himself made an argument against the rule. No further hearing was asked for, and the matter was thereupon submitted.

A similar situation was considered in Re Marks (D. C.) 176 Fed. 1018, and part of what was there said is now applicable in every respect, and may therefore be repeated:

"The question for decision is whether the bankrupt should be committed to prison for failure to comply with the order of June 24th; and upon this question the brief of the trustee's counsel concedes that:

"'All the cases are practically harmonious in the declaration that, if the court is convinced that the bankrupt is unable to comply with the order, he should not be committed for contempt. Without the physical ability to comply, there can be no contempt.'

"Unquestionably that is the rule in this circuit. The Court of Appeals approved it in Trust Co. v. Wallis, 11 Am. Bankr. Rep. 360, 126 Fed. 464, 61 C. C. A. 342, and there are decisions elsewhere to the same effect. It will be observed that the present case differs from those which involved the preliminary question whether the referee or the District Court should make an order on the bankrupt to pay money or deliver goods. Here that point has been passed. It has been finally decided that in February, 1908, the bankrupt

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had in his possession or under his control the sum of $3,000 belonging to his estate in bankruptcy; and it only remains to inquire whether he is now able to pay. In this proceeding the court will not re-examine the question whether the order should ever have been made—either at all, or in the particular amount fixed by the referee. The trustee has therefore an unimpeachable right to the money specified in the order, and presumptively the bankrupt is able to pay it; but the admission must nevertheless be made that the presumption may not correspond with the fact, and that in reality the bankrupt cannot comply with the order. Unless he has the physical ability to comply, he should not be committed for contempt. In practical effect, although perhaps not in legal contemplation, this would revive the abolished penalty of imprisonment for debt. If he cannot pay, and if this inability is the result of his own criminal act, he may, of course, be punished by the criminal law, although no civil remedy may be available in the situation. Even if he has misappropriated the money, the court has not the power to imprison him in a proceeding for contempt; for this would deprive him of his constitutional right to submit the charge of misappropriation to a jury in the proper criminal court, and would deprive him, also, of the inseparable right to be exempt from imprisonment for such an offense until he shall have been lawfully convicted. And it is also true that he cannot be imprisoned in a proceeding for contempt, if for any other reason he cannot produce the money: for the court cannot imprison as a punishment. It can only imprison to compel obedience to its order. But with an order to pay in force against him, and with the need to overcome the presumption of his ability to comply, it will no doubt happen at times that a bankrupt may fail to meet the burden of proof, and may be obliged to go to jail until he satisfies the court that he was telling the truth when he pleaded poverty. Certainly his bare denial of present ability to pay may be properly regarded with suspicion, and he may be required to satisfy the court with clearness that obedience to the order is wholly beyond his power. Such situations must be dealt with as they arise. No general rule can be laid down, and each case must stand upon its own facts. A decision upon the general subject has been recently reported from the Second Circuit. Re Stavrahn, 174 Fed. 330 [98 C. C. A. 202]."

I shall only add that the bankrupt's bare denial of present ability to pay does not satisfy me of the fact, and I must therefore enforce the order of April 12, 1911.

And now, May 5, 1911, the rule is made absolute. The bankrupt is adjudged in contempt for failing to obey the order of April 12, 1911, and the marshal is directed to take him into custody and commit him to the jail of Philadelphia county, there to remain until he pays to his trustee $69,317.14, with $20 costs, or until the further order of the court.