## In re CUMMINGS.

(District Court, E. D. Pennsylvania. June 23, 1911.)

1,938.

BANKRUPTCY (§ 393*)—IMPRISONMENT—ORDER TO PAY MONEY—FAILURE TO COMPLY—DISCHARGE.

Where a bankrupt on failing to comply with an order requiring him to pay a large sum of money to his trustee was imprisoned, and, after being confined from May 5, 1911, to June 9th following, applied for his release on the ground of poverty and inability to comply with the order, and on a hearing had June 21st it appeared that he had no money or property either in possession or under his control, or that any property was held for his benefit, he would be released.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 619–622; Dec. Dig. § 393.*]

In Bankruptcy. In the matter of bankruptcy proceedings of John E. Cummings. On petition to discharge the bankrupt from custody. Granted.

Clarence H. Goldsmith, for bankrupt.
M. Hampton Todd, for trustee.

J. B. McPHERSON, District Judge. The petitioner has been in confinement since May 5, 1911, for failing to comply with an order made April 11th, requiring him to pay a large sum of money to his trustee. Cummings v. Synnott (C. C. A.) 184 Fed. 718, and In re Cummings (D. C.) 186 Fed. 1020. On June 9th he filed the pending petition asserting his poverty and inability to comply with the order, either in whole or in part. Upon this petition a hearing has been had (June 21st) at which numerous witnesses were examined. It is not necessary to say that imprisonment for debt no longer exists. It is true that in some instances a man may still be put into jail for failing to obey the decree of a court that orders him to pay money, but this power continues to exist because in these instances a contempt of court is committed if the order is not obeyed where obedience is possible; and be-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cause the defendant may not yet have satisfied the court that the presumption of his ability to pay is opposed to the fact. This subject was considered in Re Marks (D. C.) 176 Fed. 1018. Imprisonment is one means—and I have known it to be an effective means—of finding out whether an assertion of financial inability is really true; but after a court has been clearly satisfied that a debtor is unable to pay, imprisonment cannot lawfully be continued. It would then become punishment pure and simple, and this can no longer be inflicted. In Trust Co. v. Wallis, 126 Fed. 464, 61 C. C. A. 342, the Court of Appeals for this circuit has discussed the general subject.

"The powers vested in courts of bankruptcy, to accomplish the general purpose of the bankrupt law, to wit, to segregate the estate of the bankrupt and provide for its equitable distribution amongst the creditors, are plenary and far-reaching. The court may, by summary order, direct the delivery and turning over to the trustee by the bankrupt, or by any third person holding the same under his order and control, any property which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. For disobedience of such order, the court in bankruptcy undoubtedly has the power, by attachment for contempt, to enforce compliance with such order, and punish refusal to comply. This power, however, is far-reaching and drastic, and must be exercised with cautious discretion. If the bankrupt denies that he has possession or control of the property, or, if a third person in possession thereof claims to hold it, not as the agent or representative of the bankrupt, but by title adverse to him, and there is no evidence to indisputably show that such denial or claim is false or fraudulent, and that the case is one of simple concealment or refusal on the part of the bankrupt, or the one in possession, to deliver up the property as ordered, it would be an unwarranted stretch of power on the part of the court to resort to a summary proceeding for contempt for the enforcement of its order. In the absence of fraud or concealment, the bankrupt court can only order the delivery of property to the trustee which the bankrupt is physically able to deliver up, having the same in his possession or control. If it shall appear that he is not physically able to deliver the property required by the order, then, confessedly, the proceedings for contempt, by fine or imprisonment, would result in nothing, certainly not in compliance with the order. The contempt in this case could only be purged by a reiteration of the physical impossibility to comply with the order whose disobedience is being thus punished. An order made under such circumstances would be as absurd as it is inconsistent with the principles of individual liberty."

The evidence just heard leaves no doubt in my mind about the financial situation of the bankrupt. He has no money or property, either in possession or under his control, and none is held for his benefit. He cannot pay any part of the money that he has been ordered to pay, and, so far as appears, he is never likely to have such ability. To confine him longer would be not only useless, but unlawful. If he has offended against the criminal law, the criminal law must punish him.

It is therefore ordered that he be discharged from custody.