### In re FRANKEL.

(District Court, S. D. New York. January 4, 1911.)

BANKRUPTCY (§ 136*)—PROCEEDINGS AGAINST BANKRUPT FOR CONTEMPT—ESTOPPEL BY ORDER OF REFEREE.

In a proceeding for contempt in a District Court against a bankrupt for failure to comply with an order of the referee to turn over money or property to the trustee, such order, not appealed from, is conclusive of the fact that at the date of its entry the bankrupt had the money or property in his possession or under his control.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 235; Dec. Dig. § 136.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

, In the matter of Justus Frankel, bankrupt. On motion to punish bankrupt for contempt. Motion granted.

This cause comes up on the return of an order to show cause to punish the bankrupt for a contempt of an order of the referee directing him to pay over $16,215 to his trustee. The order was made after full hearing and testimony, and it adjudged that the bankrupt was then concealing that sum of money from the trustee, and refused to pay it' over. The time expired within which a petition to review the order could be filed without the bankrupt's filing such a petition. Thereupon the trustee applied to the referee for a certificate that the bankrupt was in contempt, and upon that obtained the order to show cause. Upon the return day the bankrupt filed an affidavit saying that he had retained or concealed no money whatever, and could not comply with the order of the referee, but had no alternative, if held in contempt, but to stay in jail till released. He also submitted an account made by his own accountants to show the error of the conclusion of the referee.

Upon the first hearing the court considered the merits of the original proceeding, upon the theory that it was not conclusive in this, and also considered the account submitted. He concluded that the case was not made out against the bankrupt with enough certainty to justify a commitment, and directed that the motion be denied, unless the trustee cared to go to a special master on the facts. The case now comes up on the reargument, based upon the theory that the order of the referee was an adjudication constituting an estoppel as of the time that it was entered, and as the bankrupt does not suggest that he has disposed of any property since the order, but contents himself with contradict·'·'; the finding of the referee and swearing that he cannot comply with its terms.

Robert P. Levis, for trustee.
Irving L. Ernst, for bankrupt.

HAND, District Judge (after stating the facts as above). I have already expressed myself as dissatisfied with the finding of the referee, not so much from what he had before him, as because, with what the bankrupt produced at this h‿aring, I was' not as clear as I think I ought to be that at that time he had property concealed. Upon this motion the issues are merely this: Was the order made? Has the bankrupt disobeyed it? Has he the ability now to comply with it? As to the first two they are conceded; the question is of the third. If the order directing him to pay over the money is an estoppel, then that controversy is concluded by the order, and the only question is simply whether the bankrupt since the time of that order has in fact parted with any of the property which was then in his possession. Moreover, though it would be most unwillingly, still if that be law, it would be my duty to commit the bankrupt, even though I felt as much doubt as I do of his possession of the funds.

The question is therefore of the effect of the referee's order directing him to pay the money. I think it was essential in law, before making a summary order, for the referee to find that the bankrupt had at the time actual possession or control of the property which he was directed to turn over. The only proper purpose of such an order is to bring into the trustee's possession property belonging to the estate. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. If the bankrupt has seized and disposed of property belonging to the trustee, that may well be a civil tort, for which the trustee

might sue him in conversion and get a judgment; but he could not do so in the bankruptcy court. It is true that the Circuit Court of Appeals for the First Circuit (Re Cole, 163 Fed. 180, 188, 90 C. C. A. 50, 23 L. R. A. [N. S.] 255) speaks of such an order as though it might have merely established a debt against the respondent; but they do not indicate whether in their judgment it would be proper to enter such a summary order as a judgment upon a debt. Our own Circuit Court of Appeals, in Re Banzai Manufacturing Company, Ex parte Bergstrom, 183 Fed. 298, called attention likewise to the fact that so much of a similar order as adjudicated liability for money which the respondent had paid out could not be enforced for contempt; but it expressed no opinion that such an order was pro tanto proper, and did not have that question before it. Of course, this is a material inquiry here, because, if the determination was not necessary to the order of the referee, which might equally well have passed without it, then, although an express finding of fact, it has not the force of an adjudication and concludes nothing. House v. Lockwood, 137 N. Y. 259, 33 N. E. 595.

Still the question may be whether, though necessary to the order, the finding is conclusive in a separate proceeding like this, in which the court is asked itself to move, as though it were the complaining party. Judge Brown, in Rhode Island, has held that it is not conclusive in Re Davison (D. C.) 143 Fed. 673, deciding that upon the contempt proceedings the court must de novo always be satisfied that the bankrupt can comply with the order. However, the precise point was not mentioned by him whether in reaching that conclusion he was bound to accept as an estoppel that on the date of the summary order the bankrupt had the money, and the general proposition is undoubtedly correct that the issue must be found against the respondent of his ability to comply. On the other hand, our own Circuit Court of Appeals, in Re Stavrahn, 174 Fed. 330, 98 C. C. A. 202, proceeded upon the theory that the bankrupt upon such a proceeding must show that since the date of the order he had lost ability to comply with it, and that if he did not show that an order of committal was proper. Although it is not expressly so stated, the reasoning appears to be based upon the understanding that the order concluded the controversy up to the date of its entry. The words used are that the order makes a prima facie case; but, of course, no judgment inter alios makes any case whatever and is immaterial. The reason why they did not say that it made a conclusive case was, I think, because the bankrupt might show that since the order he had parted with the funds. In addition, it is of much authoritative weight that it has undoubtedly been the practice in this district to treat such orders as conclusive estoppels upon the date of their entry, and to leave open to the respondent only the issue of showing what he has done with the money since that time.

In Re Marks (D. C.) 176 Fed. 1018, Judge McPherson concluded that at the end of two years from the summary order, he would not commit the bankrupt because he thought him then unable to comply. He says that he was under a "presumption" of ability arising from

the order. This must mean, I think, what was meant in Re Stavrahn, supra; i. e., that having been shown absolutely to be in such possession at a given date he is presumed to remain able to comply till he shows the contrary. In Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451, though the court went far in its requirements, even to the extent of the old rule that a denial by the respondent was enough, still the summary order was itself under review. In Re Switzer (D. C.) 140 Fed. 976, the same situation existed. In Samel v. Dodd, 142 Fed. 68, 73 C. C. A. 254, the case was quite different. No authority seems to exist to the contrary, but In re Davison, supra.

If anything be left open on authority, however, upon principle the same conclusion follows. It is quite true that contempt proceedings in the federal courts have often been called criminal. New Orleans v. New York Mail S. S. Co., 20 Wall. 387, 22 L. Ed. 354; Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451; Kirk v. Milwaukee Dust Collector Mfg. Co. (C. C.) 26 Fed. 501. This means that the court is, as I have suggested, in some sense the moving party, and perhaps formally the proceeding is not between the same parties. That is not enough for the defendant's purposes, however. The proceeding presupposes that the order disobeyed was regularly and formally promulgated, and no review of it is open. People v. Spalding, 2 Paige (N. Y.) 326. Therefore, in so far as the order directs any one to do anything, he may not in the contempt proceeding question the propriety of the direction; and in so far as the order determines an existing fact, which is necessary in law to the validity of the direction, he may not question its truth. To question such a fact is to question the validity of the direction which depends upon it, and is only an indirect way of reviewing the order. Therefore now to deny the fact that the bankrupt had the money in his possession is in this case to assert that the order directing him to pay it over was erroneous. On this account, therefore, that fact is concluded, once it be granted that it was necessary to the validity of the order, which I have shown.

Quite reluctantly, therefore, I can only conclude that I was wrong originally to inquire into the merits, and that a committal must issue. However, the authorities are involved in considerable confusion, and, if the respondent wishes, he may forthwith appeal to the Circuit Court of Appeals, and I will stay the warrant meanwhile. In that case I shall permit the account from the books, with a proper affidavit attached, to be considered as a part of the answering papers.