In re WEBER CO.

Petition of WEBER.

(Circuit Court of Appeals, Second Circuit. November 11, 1912.)

No. 24.

BANKRUPTCY (§ 136*)—CONCEALMENT OF ASSETS—ORDER TO PAY—CONTEMPT.

A petition having been filed requiring a director of the bankrupt corporation to show cause why he should not turn over to the trustee upwards of $35,000, alleged to have been concealed, hearings were had before the referee, who found that the director had concealed, and was still concealing, $10,000, and ordered him to pay over that sum to the

---

trustee within five days. No attempt was made to have the order reviewed, nor was any extension of time granted; and, having failed to pay, contempt proceedings were instituted, in which the director filed an affidavit only averring that at no time at or since the filing in bankruptcy did he have any goods or money of the bankrupts under his control, and that he had never secreted or disposed of any of the bankrupt's assets, and had absolutely no money or property with which to comply with the referee's order. *Held* that, in the absence of any showing as to how or why the particular sum found to have been concealed had disappeared, the bankrupt's mere statement that he never had it did not purge his contempt, nor constitute ground for refusal to punish him for failure to obey the order.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

Petition to Revise Order of the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

In the matter of bankruptcy proceedings of the Weber Company. On petition by Max Weber to revise an order adjudging him in contempt for failure to comply with an order directing him to pay $7,000 to the trustee. Petition denied.

Abraham B. Keve, of New York City (Lewis F. Glaser, of New York City, of counsel), for petitioner.

H. H. Oppenheimer, of New York City, for respondent.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. Max Weber was a director of the bankrupt corporation, and with two other members of his family, also directors, had the entire control of its affairs. On January 29, 1910, the trustee filed a petition, averring that a large amount of assets, which had been in the control of these directors, had disappeared, and was not accounted for by them. This petition prayed for an order directing the three Webers to deliver over to the trustee a "sum of upwards of $35,000 which may be found by this court to be held by the said directors and belonging to this estate in bankruptcy." Hearings were had upon this petition before the referee, which Max Weber attended, and testimony was taken. The result was the making of an order by the referee on August 28, 1911. It recited the hearings and the filing of the petition, of affidavits, and of the testimony taken. Thereupon it found that Max Weber had concealed and was still concealing from the trustee the sum of $10,000, and ordered him to pay over that sum to the trustee within five days after service of the order upon him. This order was served on Max Weber on October 20, 1911. No attempt to review such order by application to the District Judge was ever made, nor was any extension of time to do so ever granted.

Application was therefore made to the court, upon a certificate of the referee that Weber had failed to obey the order of August 28, 1911, for an order adjudging him in contempt, and for such other and further relief as might to the court seem proper in the premises. The motion came duly on for hearing, was heard, decided adversely

to Weber, and was subsequently by the court's permission reheard; Weber being represented by counsel and filing an affidavit. On January 9, 1912, the order was entered, which petitioner now seeks to review. It named an amount ($7,000), less than the $10,000 stated in the prior order, through a clerical error in drafting or copying the proposed order. The defense presented in the petitioner's affidavit was merely that at no time at or since the filing of the petition in bankruptcy did he have any goods or money of the bankrupt under his control, that he had never secreted or disposed of any assets of the bankrupt, and that he had absolutely no money, property, or means to enable him to comply with the order of the referee. The District Judge held that this was insufficient, because Weber failed to give any reasonable explanation for the disappearance of the $10,000 which it had already been adjudged that he at one time had in his possession.

We think the conclusion of the District Judge was correct. It was in strict conformity with the opinion of this court in the Matter of Stavrahn, 174 Fed. 330, 98 C. C. A. 202, 20 Ann. Cas. 888. The petitioner had full opportunity before the referee to put in any proofs he might wish to as to whether or not he was then concealing the $10,000. Testimony was taken, and upon it the referee found that on August 28, 1911, he was concealing that sum. He made no opposition to this finding, did not seek to review it in any way, nor has he asked for a reopening on the strength of new evidence or for any other reason. Surely there was nothing for the District Judge to do, except to assume that such finding was correct. It established prima facie that Weber had at one time $10,000, which he was secreting from the estate; and his bare denial, without corroborative proof, was insufficient to overcome such prima facie case.

Upon the application to punish for contempt he made no explanation as to how or why it was that this particular sum had disappeared, merely denying that he ever had it. His statement that he had no money when the proceeding for contempt was instituted, without some such explanation, was insufficient, and the judge quite properly held him on contempt for not paying it over. To excuse disobedience of the order by such general denial would make it easy to evade the requirements of the bankrupt act.

If he has been misadvised, and finds himself for that reason in the position of being punished for not doing what it was impossible to do, presumably, upon an application to purge himself of the contempt, he would be allowed to submit evidence to show facts exonerating him, which he has heretofore failed to do.